Today is Nebel v. State Farm, 10-579. Mr. Nielsen, is that right? In the alignment of the issues in this case, we are going to yield our time to Mr. Nielsen of Nebel v. State Farm Mutual Automobile Insurance. Your Honors, may it please the Court, I'm Martin Morrissey, Counsel for State Farm Mutual Automobile Insurance Company. But we are joined in argument with the plaintiffs, so I will be arguing on behalf of Mr. David D. Nebel in addition to State Farm Mutual Automobile Insurance Company. The facts are, in a nutshell, Mr. Nebel is occupying a vehicle that is owned by a car dealership. The car dealership owns the car and therefore the car provides primary coverage. This has all been decided by the Supreme Court before. Universal Underwriters is the insurer of the car and Ron Ward Chevrolet owns the car. It's struck by a vehicle that has $50,000 in coverage, per person coverage. He's attempting to make an underinsured motorist claim, claiming his injuries exceed that amount, an underinsured motorist claim against the Universal Underwriters policy. We have argued that this primary policy, this primary coverage, should provide $1.5 million of underinsured coverage, which is equal to the liability limits of that policy. We made that argument to the Toronto Court on the basis that the election form in that policy, Mr. Nebel is an insurer and he is entitled to the rights under the policy, that the election form in the policy is ambiguous and violates the public policy of the state of Illinois, in that it drops the underinsured coverage under that minimal financial responsibility limit that is required for car dealerships in the state of Illinois, which is $100,000, $300,000, not $20,000, $40,000 as set forth in this provision. We made that argument. Judge Harrison at the trial of the court rejected that argument on summary judgment. Summary judgment was granted for Universal Underwriters against us. We appealed that. That's the only issue. I look behind me today, he's got a big piece of cardboard and it's got numbers on it from other cars and other drivers and other people, and it doesn't have a darn thing to do with this appeal. This appeal has to do with the ambiguity and the public policy concerns of this election provision, and that's it, and that's all the judge ruled on, and we're here to say no more. Now, the issues basically are, is the offer, is the offer that was made, the election form, the offer form, is the offer itself proper under Illinois law? Can a car dealership tell these insurers that you're only going to get a minimum financial responsibility limit of 2040? First of all, the offer in itself, the provision itself that is at issue here, fails to properly identify what the minimum financial obligation, liability obligation, is of a car dealership. That's number one. It simply fails to do it. Secondly, what it offers in the parenthetical language of page two of that elective options form, what it offers and tells the insurer that they are going to get is 2040, which isn't the minimum liability for car dealerships. The minimum liability for car dealerships under Illinois law is higher. The parenthetical in and of itself is illogical, is confusing and ambiguous, and thus the policy should be read against the insurer, and it violates public policy because it's a drop under, it drops under the minimum liability required. Now, going to this provision, and this is it. I mean, it's on page 911 and 912 of the record, C911. The very first page, it says election options form, and now we know that they have to be specific and they have to be clear under the law when you're trying to set up a situation where the limits for you are, where your new limits are different than the liability limits. You have to be specific. You have to specify the limits of the optional coverage without using general terms. You need advice to ensure that the optional coverage is available. Now, they've got a liability limit under this policy of $500,000, and they're trying to drop it down to a 2040, which they say on page one, they're supposed to be specific and clear and tell somebody in the 1, 2, 3, 4 paragraph, universal underwriting, policy insured, this is one of their options. You may also maintain the minimum limits required by Illinois financial responsibility. The Illinois minimum limits required for a car dealership are $100,000, $300,000. This has been decided by the appellate court four times. The minimum liability limits are $100,000, $300,000. Country Mutual v. Universal Underwriters decided that. Fuller v. Snyder mentioned it. John Deere v. Allstate. This very appellate court in Browning v. Plumlee reiterated it. That's the liability limits for a car dealership. We aren't here about regular insurance. We're here about car dealerships, and there's a specific provision under the law that applies to car dealerships that mandate the higher minimum liability. Is there a difference between the liability issue and the uninsured amounts? They would like you to think so, but they're inextricably tied together. There is no law in Illinois that just says, hey, uninsured motorists limits are this, qua uninsured motorist or qua underinsured motorist. This is what the amounts are. The underinsured, uninsured motorist provisions tie back to liability limits. Minimum liability limits applicable under the law. For example, 143-18, which is the procedure by which you are supposed to offer this and modify it. If you're going to have something different than what the limit is, you'll come to 143-18. It refers back to the minimum liability, liability limits. 20-40. It refers back to the statute that requires 20-40. It refers back to the statute that requires 20-40, which is minimum for the car dealerships. Right, exactly so, because 601, 625 ILCS 7-601, which is the mandate, mandates the insurance and refers us to 7203, which is the amount provision, has a paragraph 6 to it, pointed out in the country mutual case, that exempts those amounts if there's other statutes that speak to it. And there's another statute that speaks to it just like a country mutual case, a car dealership provision requiring minimum limits. So this paper, I'm glad she asked the question because this emphasizes the drop under that's being attempted here. I've got a very bright, well-read young lady who did the initial drafts of the brief, and she likes to talk about drop downs, drop downs, drop downs. This isn't a drop down. This is a drop under the minimum liability limits that are required for car dealership policies. They don't take this thing down to 100-300, which is the minimum liability requirements, and they're saying, well, this is UN, this is UIN, this is UIN. These things are inextricably woven together, just as Justice Carlyle said recently in the Shulz case. Liability, U, UIN are inextricably woven. The statutory framework has to be read in perimeterium. That's what he means when he's saying they're inextricably woven. He brings these things together. Well, the minimum statutory liability limits, the minimum required by law are 100-300 for car dealerships, but they're going back to an inapplicable limit. And they're saying, well, we can drop you down, we can take you down, we can drop you under that liability limit that applies specifically to car dealers. Specific over general. This was handled at the appellate court with the country mutual case. The specific liability provision for car dealerships should apply because it is more specific than the general obligation of insurance. That was set forth in that case. I'll say something else, Judge, about this idea that UIN is different. What are they referring to in the parenthetical? What are they referring to in the parenthetical where they say, you know, by marking any boxes in the column below, I reject uninsured and underinsured motorist bodily injury limits that are equal to the auto liability limits in my policy. I thereby elect the specific uninsured and underinsured motorist bodily injury limits that are designated below. Now, I think that's got to be the 2040 because I remember the principle of negation in lodging. You can't both be and not be. And they just said I reject the limits that are equal to my auto liability limits. That's the $500,000 that's kept for the four owners. So they've got to be referring to the 2040. What's the parenthetical say? The uninsured bodily injury limits that are designated below, parenthetical, quote, greater than the minimum financial responsibility limits required by law but less than the auto liability limits of my Unicover policy. Well, it's less than the auto liability limits of the Unicover policy. It's less than $500,000. The 2040 is less than $500,000 but greater than the minimum financial responsibility limits required by law. They're referring to liability. They told Judge Harrison, well, the uninsured is underinsured. Their own policy, this election, refers to liability, minimum liability. And what is it? It's 100-300. Now, they know that. They knew it a long time before April 2007. They knew it because of the John Deere case. They knew it because of the country mutual case. They knew it because of the Plumlee case. They knew it because of the Fuller v. Snyder case. They knew it because there was a statute, there was a statute, 5-101, that required them to have minimum liability limits of 100-300. Two statutes, one for used car dealers, one for, they know that. Then how is it dropping under the minimum liability limits? And how can they represent in their own election that this is greater than the minimum liability? The 2040 is not. It's substantially less. Moreover, it's not even greater than the minimum liability limits that Your Honor referred to earlier. It's equal to them. And on the first page, when they're talking about you, this is supposed to be an offer that conforms strictly with the law. If you're going to lower it, you've got to conform strictly. It's got to be specific and it's got to be right. It says you may also maintain minimum liability limits required by the Illinois financial responsibility law. True. Do they say what they are? No. They're 100-300 for car dealers. I can repeat what Justice Myerscough said in Fuller v. Snyder. We don't know what they mean. That phrase is substantially similar to the phrase they used in the policy that came up in front of Justice Myerscough. Fuller v. Snyder. And she says, We note that the phrase in Universalist policy, this is years before, minimum limits provision law. That's the phrase they used there. It's not substantially different than what they used in this one. Many refer to sections 5-101b-6, that's the 100-300 for car dealerships, 5-102b-4, that's the 100-300 for used car dealerships, as well as 7-601, which is the mandating provision for status quo. What's it mean? Well, we know what she said it meant for the appellate court. It meant that you weren't dropping your liability limits down to 20-40, because the law says the minimum liability limits for you, these types of policies, are 100-300. Now they say, well, this is UIM and UNUIM, this is different. Well, what I'd like to say on that is that the public policies that had the legislature decide that we're going to have minimum liability limits of 100-300 apply equally to you and UIM because the statutory framework moves these provisions together. If there's a good reason, as you gentlemen pointed out in the plumbing case, because it's a commercial transaction and because it benefits people in a particular way who are selling cars and gets people who aren't familiar with cars into cars, just as you pointed out, there's a rationale for the difference. And that rationale equally applies here, because liability, you are inextricably interwoven. They can't do it this way. They certainly can't do it without representing to the person who's purchasing it that this minimum is 100-300, not after four cases and statutes that are written. Do you have any more questions? This is not a car dealership, and I wouldn't even cite – he's made a claim to the trial court and they made a claim before you that the State Farm case, the State Farm v. Farmers, where Justice Carmeier three or four years ago said, well, you know, the legislature says 2040 is enough. That was not in the context, not of a car dealership. That wasn't a car dealership case. In fact, Justice Carmeier said two and a half cases distinguishing those cases, the car dealership cases. We don't think this is that type of case, because he understood. The Supreme Court understands there's a difference for car dealership policies and that public policies are different. That speaks nothing to the issue that is before this court. This is the natural progression of Plumlee, John Deere, Country Mutual, and Fuller v. Snipe to simply abide by that legislative purpose and statutory framework that these work together to require that you do not drop under the minimum liability limits that are required as a car dealer. I may have some time to speak to you again. Thank you. Yes. May it please the Court. What I've brought here is just simply an outline of the parties in the case, because there's so many parties and so many jurors involved that it's easier to keep track. So when I'm talking today, I just thought it would be a nice demonstrative use of evidence to show whoever it was and who they were insured by, so we can keep track of who the parties are. There are certain things in this case that are not at issue. The first thing that's not at issue is that universal policy in the elective optional form clearly states that it's providing underinsured and uninsured motorist loans of $500,000 for certain designated individuals. It also states that it's providing underinsured and uninsured motorist coverage of $2,040,000 for non-designated individuals. It's undisputed that Mr. Niebel was a passenger in the car, and he was hit by Kayla Hoffman, who was the asphalt driver, and she had limits of $5,100 in liability limits on her car. Therefore, Mr. Niebel is not an underinsured under the universal policy since Kayla Hoffman's liability limits exceeded the $2,040 limits of the underinsured motorist coverage under the universal policy. The appellants are here today telling you that despite those undisputed facts, that Mr. Niebel is an underinsured, and they raised three issues. Two of which were addressed. The first one is they claim that the elective options form was ambiguous. The second is they claim the elective options form was void. The answer to the first question, is it ambiguous, the answer is no. The elective options form is very clear, and Judge Harrison saw that, cited his opinion where he said, Option 3, as marked by the name insurer, provides exactly what it is supposed to provide. More than $20,000, $40,000 minimum required by law, as it provides $500,000 for certain designated individuals, but less than the $500,000 in limits provided under the auto liability coverage, or student limits, as the $500,000 is only applicable to those designated individuals. If you look at elective options form 3, that's exactly what it says. So the coverage, the uninsured and underinsured motorist coverage, is greater than the minimum statutory amount, because it gives $500,000 in limits to the designated drivers, but it's less than the auto liability amounts, because it only gives that $500,000 to certain designated drivers, while giving $20,000, $40,000 to all other individuals under the policy. The appellants, nonetheless, say that this elective options form contains conflicting provisions, because it provides less than the minimum statutory limits of $100,000, $300,000. But those limits, which are in the new, in the Fuhrer Licensing Act, are specifically liability limits. If you look at sections 101 and 102 of that act, they specifically reference liability. Okay, that evidences legislative intent that anyone injured by a driver of an auto dealer's car, who's an at-fault driver, should have more available coverage than just the average person. Correct, Your Honor, and that's enough. So why would the available coverage for a person who's hurt in another vehicle be greater than a person riding in an auto dealer's? Because you have to keep in mind the difference between the purposes of underinsured motorist coverage and liability. The legislature increased the liability limits for the dealers, because the dealers are putting people out there in test cars, and it does benefit their business as well, because it says that they allow people to take the test cars. They're putting the public at risk. Yeah, and the people who are driving those test cars are at risk as well. Well, and the people who are, and that's why there's, but the legislature has also said that as far as underinsured motorist limits or uninsured motorist limits, that those limits they believe are sufficient at 2040, because that is the amount that is deemed to be adequate to protect that person from harm from another. So you have, yes, and I don't deny that there's a comprehensive scheme of insurance of which liability and underinsured and uninsured are all linked together. It would almost seem like the legislature just missed that connection. Well, they, I don't think they missed the connection, Your Honor. I think that it's simply. You think they consciously wanted to make sure there was 100, 300 coverage for other people who were injured by a driver of the vehicle, but only 2040 for some passenger in the auto dealer's vehicle. Well, Your Honor, I think what you've got to keep in mind is that the liability limits for non-dealer cars are 2040. And so are the underinsured motorists. They're both 2040. So in those circumstances, you're saying that's adequate protection. And I think simply from the liability standpoint, they're saying from the dealership, if you're going to be putting the public at risk, then, yes, we're going to have this increased protection. But it's up to you as the dealer because, remember, that's coverage for yourself. It's not coverage for the public at harm. It's your dealership. And if you choose to take the minimum amount of 2040, which the Illinois legislature deems sufficient, we'll let you do that. Well, if a person, let's say my wife and I go and test drive a car, and I'm the driver and she's the passenger, wouldn't she be in the same position as the plaintiff passenger in this situation? Yes, and she would be in the same position as anybody else on the road at any time, whether you're in your car or somebody else's car. So tell me what the public policy would be behind requiring the dealership to provide 100, 300 liability for someone else but not for a test drive passenger in the dealership's car. Because that's not, you said a moment ago, that's for the dealer. That's not the dealer. That's a customer. That's the public going in. And I think whether they missed it or whether they just deemed it in that circumstance when it's injury to yourself, 2040 was deemed sufficient. But when you're talking about the harm that somebody in that car is going to do to others, whether it's the dealer or one of their customers, we're going to have an enhanced amount for that. But when it's just for harm to yourself, they made the decision. Either they made the decision or they chose not to make the decision, but they only did it for liability. And I think you can look at Statute 143.13a, which came out after. It's not in effect. For this case, it came out nine months, or it was effective nine months afterwards. And when the legislature wanted to make it so that all limits had to be the same, they said we're doing this for liability, we're doing this for underinsured, and we're doing it for uninsured. And they call them out specifically. But if you look at the new dealer act, or the dealer licensing act, it says liability, and it's very clear that it does not reference underinsured or underinsured owners. So when you hear the argument that the limits are 100, 300, I encourage you to take a look at that statute, because there is no reference to underinsured or underinsured owners covered in either 101 or 102. They also allege that the option three is ambiguous because it states it provides more than the statutory minimum, and then provides the statutory minimum. Well, that ignores, of course, the fact that it provides $500,000 for the designated drivers. They make the reverse argument as well, and that, of course, ignores the fact that it provides 2040 for the non-designated drivers. The second issue they bring up is whether the universal policy violates Illinois public policy. The answer to that question is no, it doesn't. Again, they claim that it violates Illinois public policy because it doesn't have the minimum levels of 100 or 300. Again, those are liability rules. The law is clear. Yes, it's an overall structure. It's a comprehensive law. But if you look at 143A and 143A2, those are specific to uninsured and underinsured. They refer back to 7203. Now, that's not a specific liability act. That's the requirements for under a policy or a bond. That says minimum limits in a policy are 24. Now, you heard them talking about section 601. That is specific to liability insurance, and you'll see that mentioned in a number of the cases in the Senate. The difference there is those cases that he's dealing with are where they were trying to determine whether the limits in 7203, which were the overall general limits applied, or excuse me, whether the limits in 101 and 102, which are liability applying to a dealership, are the ones in 601 applying. They said, well, look, they're more specific. They say they apply to a dealer. They apply to a dealer. So you apply 101 and 102. That's 601. Those have nothing to do with this case. Those have nothing to do with this case because those cases, Fuller, Plumlee, none of those cases have anything to do with underinsured or underinsured motorists. There's no discussion of them. They don't address it. They're addressing issues in those cases where they're trying to exclude some people from the definition of insured while covering others. They have nothing to do with a situation like this where everybody under this policy receives at least the minimum statutory requirements of uninsured and underinsured motorist coverage. They argue that it's void since it provides uninsured and uninsured motorist coverage in less than the minimum liability amounts. You heard him say it goes hundreds. This doesn't just take it down to 100 to 300. It takes it down to 24. And the brief in his project, well, they can cite to no cases that says you can do that. And not to be flippant, but my report is they cite to no cases that say we can't, and the reason I say that is I think the lack of case law is understandable because they're mixing apples and oranges again. There is no reason why you cannot bring the underinsured and underinsured motorist coverage down to the minimum statutory limits for underinsured and underinsured motorist coverage. Whether your limits for liability are 100 or 300, whether they're 2040, whether it's some other level, there's no public policy reason why you can't bring them down to the 2040 that the legislature has specifically determined are adequate to protect your interest as to yourself, not to the public, not to harm you or others, but for harm that's done to you, the legislature has determined that you're adequately protected in 2040. But what can a person ever get out of 2040 underinsured motorist coverage? They will not. They'll never get a penny because they're underinsured. You're correct, Your Honor, and I think that Judge Harrison addressed that very succinctly. I mean, I read you what he says. That the underinsured motorist provision will not respond to a claim for non-designated individuals as a function of the insured choosing the minimum limits for underinsured motorist coverage. Yeah, I'm just saying if the minimum required liability is 2040 and underinsured only comes in if the at-fault driver has coverage of some kind, it's always going to eat you can't ever get anything in any accident. You're right, Your Honor. Where it comes in is that the statute only requires underinsured motorist coverage. When the uninsured motorist coverage exceeds the minimum statutory limits. True. So then that's the key, is it exceeds. Because otherwise, whether it's this case or any other case, if you choose the minimum uninsured limits, you're never going to have your insurance applied. It's not going to happen. It's a function of choosing minimum limits. And that's why the statute says where it exceeds it is where you need to equal it with underinsured coverage as well. Okay. So. What we have here, though, is 2040 uninsured and underinsured. That's correct, Your Honor. That's correct. Mr. Morsi talked about how everything is inextricably intertwined. Again, I agree there's a comprehensive structure, but the limits of liability and under and underinsured motorist coverage are not inextricably intertwined. If they were, it would be Section 143A2, which specifically allows you to have different limits for liability versus underinsured and underinsured, as long as the insured elects that. And the case of Lee v. John Deere said that 143A2 provides the exclusive method for how to elect limits less than the auto liability limits. If you look at Election Reform Option 3 and 1 and 2, it lays it out. It meets all the requirements that are set forth in there. It gives an explanation of what underinsured and underinsured motorist coverage is. It allows the insured to make a written request for limits less than the liability limits. And it advises the insurer of the right to reject coverage in excess of the statutory minimum. It's all laid out. And when you get to that last page, the insurer has, you know, they have three options on the last page. They check Option 3, 3.500,000 for designated individuals, 2,040 for non-designated individuals. State Farm, the case of State Farm v. Farmers is relevant in this case in the sense that in that case, that case did deal with liability. It did not deal with underinsured and uninsured motorist coverage. But the Illinois Supreme Court in that case said that even when you're dealing with liability limits, which are there to protect the public and not yourself, even there they sort of did not violate Illinois public policy to have different insurers have different limits. They said as long as everybody at least gets the minimum limits, you're okay. Now, we talked about it earlier. There's a statute that came in about a year or two after that 143.13a where they did change that. But that's instructive because, like I said, in that statute, they specifically say uninsured, underinsured, liability. If you could just refer to liability and be covering the whole field, including underinsured and underinsured, as the appellants argue, there'd be no reason for the legislation to call those three specific and different types of insurance coverage out in 143.13a. They know when to do it and when they want to do it. They do call them out specifically. It was not brought up in argument but addressed it very quickly. They did address it in their brief that there's a certificate of insurance that was filed and they're saying because you filed a certificate of insurance that said you have $300,000 in auto liability coverage, you should be stuck with saying you have $300,000 in liability. Look at that statute, which is in the Dealer's Licensing Act. It requires dealers to file with their application a statement as to their liability insurance. And if you look at the certificate, it specifically references the garage operations and auto hazard portion of the universal policy, which is coverage part 500, which is the liability portion of the policy. So the certificate of insurance does not make any statement as to the levels of uninsured, underinsured, motorist coverage and there's no requirement that any such statement is made in the certificate of insurance. So that is really red herring in this case. I conclude by saying, once again, it's undisputed that with limits of 5,100, Ms. Hawk and with limits of 2040 for Mr. Neible, he was not an underinsured under our policy. According to the very plain and direct terms of Option 3, he simply wasn't underinsured under our policy. Illinois case law and statutes have supported that. And the elective option form is not ambiguous. It's not board against public policy. And I ask you to reaffirm the circuit court's ruling. Thank you. Thank you, counsel. I'd like to steer clear of the fruit analogies because this isn't fruit. This is something that's interwoven. That's what the Supreme Court says. It's interwoven. We're not talking about separate entities like an orange over here and an apple over here. This is an interwoven whole. And we have to look at all the statutory. We have to look at the relevant statutory references in order to figure it out. You can't drop below the mandated limit. The liability limit that's mandated at law is 100-300. You can't drop below it. The mandated limit for non-car, the mandated limit for a truck is higher, too. There's other situations where the mandated limit is. You cannot drop your U coverage lower than the mandated liability limit. That's in 143A2. You can't do it. They say they can't. Why do they say they can? Assertion. Mere assertion. They say that that liability provision that says we have to have 100-300, that's only liability. It has no effect on anything else, anything else in the statutory framework for U coverage. Therefore, you know, we can drop it wherever we want to. Even though, even though the provision that they refer to 7203, 7203 with this 2040 makes no mention of U coverage. They're referring you to 7203 and nowhere in the provision does it say a word about insured or uninsured coverage. It doesn't say it in 7601. The word is not used in the coverage amount provision that he says should apply here. The reason? 601 says 7203 doesn't apply to car dealerships. 601 accepts that amount for car dealerships. You've got to have a higher liability amount. But then that's wiped out. 7203 doesn't have any application to them. And they're in here asserting, and it's just assertion, that we don't have to follow the statutory framework. We can go back to that. We can tell people, but we can say stuff that means nothing. What it means nothing to say, well, the minimum financial responsibility limit is where we've got to go and then not tell them what it is. And we can go under what our minimum financial responsibility limit is, which is $100,000 for the U. Mr. Knabel's a public? The public's at risk? Mr. Knabel's a public? He's a public at risk. He happens to be in the vehicle being driven by Carol Spafford. He's a public at risk. And there was a question about missing it. I don't think there's anything missed here. I think after four appellate court cases and a statute telling you that your minimum liability limit is $100,000, $300,000, you better bring it down. If you want to bring it down, you better bring it down to the minimum liability limit. That's all that far you can go. You don't drop under it. Because that violates the statutory framework. Very definitely violates the statutory framework. I don't think they missed it. Because subpart 6 under the 700 series exempts that amount. I don't think you can go back to it. I mean, they're very different public policy concerns associated with somebody being able to buy insurance on a regular car. They don't have 24-hour policy. It's very different. This is a commercial transaction. These people are selling cars, and they send people out on these cars. This is different. And there's good reason for it to be different, and the legislature set it up that way. You can't drop. You just can't do it. This is sufficient. The legislature said it's sufficient at 2040. The legislature did not say it was sufficient at 2040 for car dealerships. It very definitely did not say it. Just the opposite is set forth in the statutory framework. And he says, well, the certificate says $300,000.  It said $300,000. I guess the main reason we include that is to underscore the sheer absurdity of this provision, the confusion associated with this company, that says a $300,000 policy limit certificate to the state of Illinois to do business, for this company to do business, and actually has a policy that says $500,000. Again, what is the minimum financial limit here? What they sent to the state of Illinois is different than what they're trying to sell to their customer. It says right at the bottom of that certificate. This thing changes. We're going to send it to you in 10 days. So now, what is the purchaser of this product thinking? Well, the certificate. Leave that to your imagination. What's the liability limit on my policy? Is it the $300,000 certificate that they sent to the state? Is it the $500,000? Is it the $2,040,000 that doesn't apply? Or is it the $100,000, $300,000 that's under the law? We know where they want to go. Gentlemen, thank you for your hard work this afternoon. The group will take the matter under advisement.